IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
        Plaintiff, )
)
v. ) No. 04 CR 887
)
LIONEL SAUCEDO, ISMAEL SAUCEDO, )
JR., a/k/a "Junior," and ANGEL )
FLORES, )
)
        Defendants. )

**MEMORANDUM OPINION AND ORDER**

Defendants Lionel and Ismael Saucedo were charged in a four-count indictment on October 13, 2004. Count I charges defendants with conspiracy to possess with the intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846. Count II charges defendants with distributing approximately 7,015 grams of cocaine on November 26, 2003, in violation of 21 U.S.C. § 841(a)(1). Count III charges defendants with distributing six kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(c).[1] The indictment is based largely on evidence gathered from a series of phone conversations, observed as the result of wiretaps obtained pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. ("Title III"). Defendants

---

[1] Count IV named a co-defendant, Angel Flores, who has since been dismissed from this case.

move to suppress this evidence, arguing that the wiretaps were improper. I deny that motion, for the reasons stated below.

I.

As an initial matter, the government challenges defendants' standing to contest some of the wiretaps. Specifically, the government argues that defendants lack standing to challenge the wiretap of Telephone 1 or Telephone 4, addressed in the May 2, 2003 and June 4, 2003 applications, respectively. The government concedes, however, that defendants have standing to contest those applications to the extent that evidence gathered under the applications was used to support later applications to wiretap telephones defendants did use.

May 2, 2003 application. Before an application for a Title III wiretap may be presented to a federal judge, the application must be authorized by a designated Department of Justice official. 18 U.S.C. § 2516(1). Defendants argue that the authorization for the May 2, 2003 application was not sought until May 12, ten days after the application was presented to the court. Defendant rely solely on stamped dates on the authorization as support for their argument, noting that the date stamped near the signature appears to read "May 12, 2003." The government responds that the stamp used to record the date above the authorization signature must have been set incorrectly, allowing either a "1" or a short line to be inserted in the date. The government's explanation is plausible.

The authorization is dated in three other locations: a date stamp without signature on Page 1, and fax time and date stamps on both Page 1 and Page 2. All three of those dates indicate that the authorization was granted on May 2, 2003. Defendants point to the "abnormally elongated" space between the word "May" and the numeral "2" on the Page 1 date stamp. Such a space is the natural result of setting a date-stamp with rotating numerals for the date to a single-digit date, as the space for the second numeral remains blank. This same spacing can be seen on other applications submitted where the date also includes a single-digit numeral. Defendants' motion to exclude all evidence gained from the wiretaps authorized by the May 2, 2003 application is denied.

<u>Necessity requirement.</u> Defendants challenge multiple applications, arguing that the government failed to demonstrate the necessity for a wiretap. 18 U.S.C. § 2518(1)(c). For each wiretap application, the government is required to submit

> (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

*Id.* Defendants argue that the government has failed to do so, relying instead on boilerplate language. Defendants argue that the following applications are deficient for failure to show necessity: June 4, 2003; July 9, 2003; August 25, 2003; August 29, 2003; September 2, 2003; September 23, 2003; September 24, 2003; October 3, 2003; and March 10, 2004.

3

When presenting an wiretap application to the court, the government's burden in showing that other techniques will not suffice is not great. *United States v. Zambrana*, 841 F.2d 1320, 1329 (7th Cir. 1988). The government need only show one of the following factors: that other investigative methods (1) have failed; (2) are unlikely to succeed; or (3) are too dangerous. *Id.* at 1329. A factual predicate for the government's allegations must be present in the supporting affidavit, but wiretaps need not be the last investigative resort. *Id.* at 1330. On review, I give great deference to the issuing court's decision to grant the application. *See, e.g., United States v. Cozzo*, No. 02-CR-400, 2003 WL 57031, at *1 (N.D. Ill. Jan. 7, 2003); *cf. United States v. Hanhardt*, 157 F. Supp. 2d 978, 986 (N.D. Ill. 2001)(applying *de novo* review but giving deference to factual findings of issuing judge).

The government has gone beyond boilerplate language in its applications and accompanying affidavits. In each, the government lays out what other investigative methods it has attempted or considered, what evidence was gained thereby, and why those methods were insufficient. The government lists other methods including physical surveillance, subpoenas, use of undercover agents, use of confidential witnesses, interviews with suspects, search warrants, and telephone tracking methods such as pen registers. The government notes that several of these methods - notably telephone

4

tracking methods, interviews and search warrants - would not produce the type of evidence needed to continue the investigation upward along the cocaine supply chain. The government also notes that many of the other methods, especially physical surveillance, subpoenas, and interviews, would alert not only those suspects immediately contacted, but also other suspects as yet unknown at the time, of the ongoing investigation.

Defendants make a number of arguments as to why the government should have used other methods of investigation, even suggesting several specific methods. Defendants point to the government's use of confidential witnesses, and claim that greater use should have been made of those witnesses. But the government explains, both in its response and in the affidavits supporting its applications, use of the confidential witnesses was limited as those witnesses only had contact with a few of the suspects under investigation. Further, the government notes that it was forced to stop using one of its two confidential witnesses once that witness gave the government reason to believe he was no longer trustworthy. Defendants also argue that the government should have arrested the two low-level distributors it discovered early in its investigation, and used them as state's witnesses. However, in addition to the aforementioned problem of alerting the other suspects, the government notes in its response that one of these

5

individuals remains a fugitive and the other appeared for the first time in May 2005.

In challenging later wiretap applications, defendants argue that the government had already identified the suspects who would eventually be charged, and therefore had no need to continue its investigation via wiretaps. Defendants point me to no legal authority for the proposition that criminal investigations have a set time-limit. Nor do they provide support for their contention that once the scope of suspects had reached a certain level, investigation via wiretap must stop. After review of all nine applications challenged for lack of necessity, I find that there was no abuse of discretion on the part of the various judges involved in granting the applications.

Probable cause. Defendants argue that evidence resulting from the October 3, 2003 application must be suppressed, as the government lacked probable cause to support the application. Probable cause under Title III is reviewed in the same manner as probable cause to issue a search or arrest warrant. *United States v. Hanhardt*, 157 F. Supp. 2d 978, 987 (N.D. Ill. 2001). There is no precise test for probable cause. *Id.* Instead, I must examine the totality of the circumstances, and make a "practical, common-sense decision" whether those circumstances indicate a fair probability that the wiretap will uncover evidence of a crime *Id.*

The affidavit accompanying the October 3, 2003 application supports a finding of probable cause. The application sought to place a wiretap on two telephones; one had been tapped before, the other was a new telephone. In the affidavit, a Special Agent involved with the investigation attested to the following circumstances: that a known suspect had been using both telephones; that a number of calls on the first telephone involved drug sales, general conversation about drugs, or firearms sales (transcriptions of a number of calls were also provided); and that both telephones had been called frequently - hundreds of times - by other suspects of the investigation, known and unknown. The number of calls between the targeted telephones and telephones used by other suspects was recorded through the use of pen registers and toll records. The calls between the targeted telephones and other suspects, supported by the additional information provided in the affidavit, supports a finding of probable cause. *Id.* (citing, inter alia, *United States v. Fairchild*, 189 F.3d 769, 776 (8th Cir. 1999)).

November 6, 2003. Defendants argue that evidence resulting from the November 6, 2003 application must be suppressed, as the application has been withheld from defendants in discovery. Evidence gained from wiretaps is inadmissible unless the government provides to the defendants, at least ten days prior to trial, a copy of the application and supporting affidavit. *United States v.*

7

*Danovaro*, 877 F.2d 583, 587 (7th Cir. 1989)(citing 18 U.S.C. § 2518(9)). The government states that the November 6, 2003 application and affidavit were inadvertently omitted from discovery provided to defendants, and that a copy has now been provided. As no trial date has yet been set, the government has provided the materials at least ten days prior to trial, and suppression of the material is not required.

## II.

When a communication is intercepted, pursuant to 18 U.S.C. § 2518, the recording must be sealed. 18 U.S.C. § 2518(8)(a). Defendants argue that the original recordings of the communications intercepted pursuant to the wiretap applications in this case were not properly sealed, and therefore the evidence gained thereby must be suppressed. The government explains the interception and recording process as follows:

When a call is intercepted, both the audio from the call and details about the call are temporarily recorded on a computer's hard drive, using a system called VoiceBox. The audio is also routed to a monitoring station where an agent can listen to the call. After the call is complete, the file is closed and copied to a second hard drive, called the Scratchpad. After the call is transferred to the Scratchpad, it can no longer be accessed on the first hard drive. The file is named, and that name is added to a list of files to be copied to archival disks, one Evidentiary disk

and one Working disk. The Evidentiary disk is known as a "write once, read many" disk, or WORM. Once the call file is transferred to the WORM Evidentiary disk, it can be accessed but not altered or erased. Once the interception period ends, the Evidentiary disk or disks containing the intercepted calls are sealed pursuant to § 2518(8)(a).

Defendants do not dispute that the above summarized the interception and recording process of the government. Defendants do not argue that the WORM disks were not sealed, nor that those disks do not contain the calls intercepted pursuant to the multiple applications. Defendants argue that the government should have sealed the first hard drive, not the WORM disks. Defendants support their argument with the ruling in *United States v. Rivera*, 153 F.3d 809 (7th Cir. 1998). *Rivera*, however, suggests that what the government did here was legitimate. *Id.* at 811-12. When multiple copies of a recording are made, such as the Evidentiary and Working disks, only one need be sealed at the close of the interception period. *Id.* at 812. There is no support for the proposition that the hard drive, used as temporary storage in the recording of calls, becomes the "original" recording which must be sealed. Sealing the WORM Evidentiary disk serves the purpose of § 2518(8)(a) — preserving the recording and guarding against tampering with or editing.

III.

Finally, defendants argue that evidence seized from Ismael Saucedo on the date of his arrest, October 9, 2004, must be suppressed. Defendants argue that the impetus for the arrest came from a telephone call between Mr. Saucedo and another suspect, and that as the government had no authorization to tap either man's telephone, the resulting evidence must be suppressed. Defendants refer to the affidavit supporting an October 22, 2004 wiretap application to support their contention. The government responds that the information contained in the paragraph the defendants indicate was gained in a post-arrest statement by another suspect, Rodney Rosario. There is no indication in the paragraph that any information came from an intercepted telephone call; the alleged conversation between Mr. Saucedo and the other suspect is included solely to explain how Mr. Rosario came to be in possession of the cocaine found when he was arrested.

Defendants' motion to suppress Title III material is denied.

IV.

Defendant Ismael Saucedo ("Ismael") also moves to suppress evidence found as the result of a search of his home. That evidence consists of a firearm, approximately 751 grams of mixtures containing cocaine, and a sum of U.S. currency. After Ismael was arrested on October 9, 2004, the arresting agents searched his house and garage, locating the evidence at issue. The government

contends that Ismael gave both verbal and written consent for the search, attaching his signed consent form to its response. Ismael claims he never gave consent, and moves for a hearing on the issue.

Evidentiary hearings are only granted when the defendant presents "definite, specific, detailed, and nonconjectural" factual assertions to support his claim of an illegal search. *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992). Ismael's only statement to counter the government's evidence that he consented to the search is the statement: "I did not voluntarily consent to this search." Ismael makes no factual allegations that he was coerced into verbally consenting or signing the consent form; nor does he make any allegations regarding the form that coercion might have taken. Ismael has not met his burden of establishing a *prima facie* case that the search was illegal. *United States v. Toro*, 359 F.3d 879, 884 (7th Cir. 2004). The motion to suppress is denied.

**ENTER ORDER:**

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: July 7, 2005